**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MEGAN CRADDOCK, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 14 C 10301 |
| v. | ) ) | Judge Joan H. Lefkow |
| BEATS MUSIC, LLC, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Megan Craddock filed a putative class action complaint against Beats Music, LLC

("Beats Music") alleging willful and negligent violations of the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (Dkt. 1 ("Compl").) Beats Music has moved to stay the

litigation and to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 *et*

*seq.*[1] (Dkt. 23.) For the reasons stated below, the motion is granted.[2]

## BACKGROUND[3]

On January 23, 2014, Craddock downloaded a seven-day, free trial of a cell-phone

---

[1] Beats Music styles its motion as one for judgment on the pleadings or, in the alternative, for summary judgment. Because the purpose of Beats Music's motion is to invoke the arbitration clause contained in the dispute resolution agreement, the court construes the motion as one to stay the litigation and to compel arbitration. *See Halim* v. *Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." (citation omitted) (internal quotation marks omitted)); *Seremak* v. *Am. Express, Inc.*, No. 10 C 3463, 2011 WL 3359915, at *3 (N.D. Ill. Aug. 3, 2011) ("[C]ourts presented with a motion to dismiss based on an arbitration agreement routinely construe [it] as one to stay the litigation and compel arbitration." (citations omitted)).

[2] The court has jurisdiction under 28 U.S.C. § 1331. Venue is appropriate in this district under 28 U.S.C. § 1391(b).

[3] The following facts are drawn from the pleadings and the parties' filings in connection with the instant motion. *See Reineke* v. *Circuit City Stores*, No. 03 C 3146, 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004).

application released by Beats Music, a subscription-based, music streaming service. (Compl. ¶¶ 12–13.) To take advantage of the free trial, Craddock created an online account and provided her name, date of birth, cell phone number, and email address. (Dkt. 24 ¶¶ 6–7.) She also created a username and password. (*Id.* ¶ 7.) Before clicking on the link reading, "Start 7-Day Trial," the application notified Craddock that "[b]y tapping Start 7-Day Trial you agree to the Terms of Use and Privacy Policy." (*Id.* ¶¶ 9–10.) Craddock clicked the link.

Included in Beats Music's Terms of Use is a dispute resolution provision, which is broken into a number of subsections. (*Id.* ¶ 13; *see also* dkt. 24 Exh. 5.) First, under the "Negotiations" heading, the agreement requires informal negotiations between the parties when a dispute arises:

> Before initiating any arbitration, you and Beats Music agree to first attempt to negotiate any dispute, controversy, or claim . . . arising from the Policies or related to the Service informally for at least thirty (30) days.
>
> In the event of a Dispute, you or Beats Music must give notice to the other party in writing. Such notice must set [*sic*] include the name, address, and contact information of the party giving it, the nature and basis giving rise to the claim or dispute, and the specific relief requested. . . .
>
> . . . You and Beats will attempt to resolve a Dispute through informal negotiation within thirty (30) days from the date the first notice is sent to the other party. After thirty (30) days, either you or Beats Music may commence arbitration.

(Dkt. 24 Exh. 5 § 22.1.) Second, under the "Binding Arbitration" heading, the agreement sets out specific procedures that the parties must follow should the informal negotiations fail to resolve the dispute:

> Any unresolved disputes arising under this Agreement shall be submitted to arbitration in the City, County, and State of California. Any dispute . . . where the total amount of the award sought is less than $10,000 will be resolved by binding arbitration

solely between you and Beats Music. The arbitration shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association, provided that the parties and the arbitrator shall follow the Federal Rules of Civil Procedure in the taking of discovery and the submission of evidence. The award of the arbitrator shall be binding and may be entered as a judgment in any court of competent jurisdiction.

(*Id.* § 22.2.) The agreement also contains a class action waiver, which provides that "no claim or dispute . . . may be heard as a class action." (*Id.* § 22.4.)

Shortly after downloading the application to her cell phone, Craddock received a text message from an unidentified number, reading, "Beats Music Free Msg. You may qualify for special offers on Beats Music through AT&T. Redeem here http://beats.mu/p4Ds." (Compl. ¶ 15.) Craddock claims that AT&T Mobility, LLC sent the text as Beats Music's agent and that the URL referenced in the message is a website owned and operated by Beats. (*Id.* ¶ 16; dkt. 31 at 2, 7.) Further, Craddock maintains that she never consented to receive the message. (Compl. ¶ 18.)

Craddock filed suit against Beats Music on December 23, 2014, individually and on behalf of a class consisting of "[a]ll persons within the United States who received one or more unauthorized text message advertisements on behalf of Beats at any time in the four years prior to the filing of the Complaint." (*Id.* ¶ 24.) Craddock alleges that in sending the unauthorized text message, Beats Music violated the TCPA, which, as applied here, prohibits the use of an automatic telephone dialing system to send text messages to cell phones unless the texted party gives prior express consent. *See Sojka* v. *DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1000–01 (N.D. Ill. 2014). Beats Music argues that the dispute resolution agreement in the Terms of Use requires arbitration of Craddock's claims.

**LEGAL STANDARD**

The FAA governs the enforceability of arbitration clauses in state and federal courts, *see Jain* v. *de Mere*, 51 F.3d 686, 688 (7th Cir. 1995), and provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co.* v. *Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citations omitted). In determining whether to compel arbitration, the court may consider exhibits and affidavits that are outside the pleadings and must draw all reasonable inferences from those materials in the light most favorable to the non-moving party. *Webb* v. *Midland Credit Mgmt., Inc.*, No. 11 C 5111, 2012 WL 2022013, at *2 (N.D. Ill. May 31, 2012).

**ANALYSIS**

The parties do not dispute that a valid and enforceable agreement to arbitrate exists. Thus, the only issue for the court is whether the present dispute falls within the scope of the arbitration clause.

State-law principles of contract formation determine whether an arbitration clause applies to a given dispute. *Gore* v. *Allitel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Here, the Terms of Use in which the dispute resolution agreement is found contain a choice-of-law clause providing that the Terms "will be . . . governed by, and . . . construed under, . . . the laws of the State of California." (Dkt. 24 Exh. 5 § 6.) Neither party disputes that California law applies. Thus, the court will apply California law. *See Ross Bros. Constr. Co., Inc.* v. *Int'l Steel Servs., Inc.*, 283 F.3d 867, 874 (7th Cir. 2002) (noting that an arbitration clause "must be

interpreted pursuant to the purchase order agreement's choice of law provision"); *Hoopes* v. *Gulf Stream Coach, Inc.*, No 1:10-CV-365, 2012 WL 1029352, at \*4 (N.D. Ind. Mar. 26, 2012) (applying Michigan law to construe the scope of the arbitration clause when the underlying agreement contained a choice-of-law clause providing that Michigan law applied). With that said, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032 (citations omitted). Indeed, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (citations omitted) (internal quotation marks omitted).

As an initial matter, the parties disagree as to which section of the dispute resolution agreement specifies the scope of the arbitration clause. Beats Music argues that the "Negotiations" section and the "Binding Arbitration" section should be read together to require arbitration of "any dispute, controversy, or claim . . . *arising from the Policies or related to the Service*" that cannot be resolved through informal negotiations. (Dkt. 24 Exh. 5 § 22.1 (emphasis added).) Craddock, on the other hand, asserts that the language of the "Binding Arbitration" section governs, therefore limiting the reach of the arbitration clause to "[a]ny unresolved disputes *arising under this Agreement*." (*Id.* § 22.2 (emphasis added).) According to Craddock, the broader language in the "Negotiations" section does not change this interpretation, because the phrase "Before initiating any arbitration" at the start of that section indicates that the informal negotiation requirement applies only to claims headed for arbitration. Thus, Craddock suggests that the dispute resolution agreement as a whole applies only to claims "arising under this Agreement." Craddock's reasoning is unpersuasive.

As noted above, the first section of the dispute resolution agreement provides, "Before initiating any arbitration, you and Beats Music agree to first attempt to negotiate any dispute, controversy, or claim . . . arising from the Policies or related to the Service informally for at least thirty (30) days." (*Id.* § 22.1.) The second section states, "Any unresolved disputes arising under this Agreement shall be submitted to arbitration in the City, County, and State of California." (*Id.* § 22.2.) The plain reading of these provisions is that "any dispute, controversy, or claim" that arises from Beats Music's policies or is related to Beats Music's services must be submitted to arbitration, provided that it cannot be resolved informally. And any doubt about this interpretation is put to rest by the last sentence of the informal negotiations section, which reads, "After thirty (30) days, either you or Beats Music may commence arbitration." (*Id.* § 22.1.)

Thus, the phrase "arising under this Agreement" does not limit the scope of the arbitration provision. Nor is it clear how the reach of the arbitration clause would be limited by the phrase, as the term "Agreement" is not defined in the Terms of Use. Instead, the phrase "arising under this Agreement" merely refers to the claims specified in the previous section pertaining to informal negotiations—namely, those "arising from the Policies or related to the Service." Craddock's interpretation is unnatural as it limits the claims subject to the *earlier* informal negotiations section to those specified in the *later* arbitration section of the agreement.

"[L]anguage in a contract must be construed in the context of [the] instrument as a whole," *Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1271, 5 Cal. 4th 854, 21 Cal. Rptr. 2d 691 (1993) (emphasis omitted) (citations omitted) (internal quotation marks omitted), and "[c]ourts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Ins. Co.* v. *Pisciotta*, 640 P.2d 764, 767–68,

6

30 Cal. 3d 800, 180 Cal. Rptr. 628 (1982) (citations omitted).  In this case, the language is sufficiently clear.

The court, therefore, must determine whether Craddock's claims fall within the scope of "any dispute, controversy, or claim . . . arising from the Policies or related to the Service."  (Dkt. 24 Exh. 5 § 22.1.)  The Terms of Use define "Policies" as an umbrella term encompassing the Terms themselves, as well as Beats Music's Privacy Policy, Payment Terms, and Gift Card Terms.  (*Id.* § 1.)  The word "Service" is defined to "include[] any version of the Beats Music website, application, software, data and content of any kind, including without limitation, any artwork, text, video, audio, pictures or other content . . . served through the software or accessed via any website or application owned or controlled by Beats Music."  (*Id.*)  It is well established that, as a matter of federal law, language such as "arising out of," "arising from," and "related to" is extremely broad and creates a presumption of arbitrability.  *See Gore*, 666 F.3d at 1033; *Kiefer Specialty Flooring, Inc.* v. *Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *Sweet Dreams Unlimited, Inc.* v. *Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993); *Hoenig* v. *Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 962 (N.D. Ill. 2013).

Craddock's claims are based on her allegation that Beats Music sent her a text message, through AT&T Mobility, LLC, alerting her to a special offer and directing her to Beats Music's website.  These allegations arise from the Policies, as the term is defined in the Terms of Use. Indeed, the Terms of Use section titled "AT&T Offers" discusses special offers available to qualifying AT&T customers (dkt. 24 Exh. 5 § 9), and the "Privacy Policy," which is incorporated by reference into the Terms of Use, discloses that Beats Music may share information regarding its users "with strategic business partners in order to send communications to you about promotions, special offers, and products that may be of interest to you."  (Dkt 33

Exh. 1 § 5.) Presumably, the text message to which Craddock objects came about as a result of the special offers and information-sharing procedures discussed in these provisions. Further, Craddock's claims relate to Beats Music's "Service." The parties agree that Beats Music obtained Craddock's cell phone number when she registered for the free trial and downloaded the cell phone application. Thus, in this sense, Craddock's claims relate to the "Service" because that term is defined to "include[] any version of the Beats Music . . . application." (*See* Dkt. 24 Exh. 5 § 1.) Further, the fact that the text message referenced a "special offer" and directed Craddock to Beats Music's website supports the proposition that Craddock's claims should be arbitrated—indeed, the term "Service" extends to "any version of the Beats Music website." (*See id.*) Given the broad reach of the contractual terms at issue, it cannot be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore*, 666 F.3d at 1032 (citations omitted) (internal quotation marks omitted).

Craddock argues that her claims should not be arbitrated because her registration for the free trial is, at most, a but-for cause of the text message, which is insufficient to invoke the arbitration clause. Controlling authority, however, makes clear that Craddock's claims are sufficiently related to the services offered by Beats Music. In *Andermann* v. *Sprint Spectrum L.P.*, 785 F.3d 1157 (7th Cir. 2015), the plaintiffs obtained mobile phone service from U.S. Cellular, and their contract contained an arbitration clause providing that "any controversy or claim arising out of or relating to" the contract would be resolved by binding arbitration. *Id.* at 1158. The contract also provided that U.S. Cellular could assign the agreement without the plaintiffs' consent, and U.S. Cellular did just that in May 2013, selling the contract (complete with the arbitration clause) to Sprint. *Id.* Sprint sent a letter to the plaintiffs a few months later notifying them of the sale and informing them that their mobile service would be terminated on

January 31, 2014 because their cell phones were not compatible with Sprint's network. *Id.* In December, Sprint placed six phone calls to the plaintiffs reminding them that their service was about to expire and adding that it had offers and devices available to suit their needs. *Id.*

The plaintiffs filed suit, alleging that Sprint had violated the TCPA in placing the calls, and Sprint moved to compel arbitration under the arbitration clause in the contract between the plaintiffs and U.S. Cellular. *Id.* The district court denied the motion to compel arbitration, but the Seventh Circuit reversed, finding that the contract was intimately related to the plaintiffs' claims. *Id.* Specifically, the court explained that "[t]he contract authorized an assignment, and because of the incompatibility of the assignor's . . . cellphones and the assignee's . . . mobile phone network, Sprint had had to terminate the U.S. Cellular customers," including the plaintiffs. *Id.* at 1158–59. Because the purpose of the calls was to inform the plaintiffs of substitute service, the plaintiff's claims based on the calls were related to the assignment provision in the contract and thus subject to arbitration. *Id.* at 1159. Similarly, here, Craddock's downloading of the application gave rise to the text message at issue, and the content of the message itself referred to Beats Music's website, which is included in the definition of "Service" set forth in the Terms of Use. Craddock's claims must be arbitrated.[4]

Finally, Craddock contends that because AT&T, rather than Beats Music, sent the text message, her claims cannot possibly relate to Beats Music's services. According to Craddock, the text message could have been sent to any AT&T customer, regardless of whether they had previously registered for the Beats Music seven-day trial. Craddock, however, cannot sue Beats

---

[4] *Smith* v. *Steinkamp*, 318 F.3d 775 (7th Cir. 2003) does not change this result. As the Seventh Circuit explained in *Andermann*, *Steinkamp* simply stated that "'absurd results' would ensue if the arising-from and relating-to provisions contained in a payday loan agreement . . . were . . . applied to a subsequent payday loan agreement that did not contain those provisions." *Andermann*, 785 F.3d at 1159 (citation omitted). *Steinkamp* does not apply here, as Craddock's claims fall within the scope of a single dispute resolution agreement.

Music while maintaining that AT&T was solely responsible for the message. Indeed, her theory

of liability is that in sending the message, AT&T acted as Beats Music's agent. (*See* dkt. 31 at

10.) If she has determined that AT&T sent the text message independently, she has sued the

wrong party and should dismiss her claims against Beats Music. As is, Craddock's claims will

be sent to arbitration.[5]

## CONCLUSION AND ORDER

For the foregoing reasons, Beats Music's motion to stay the litigation and to compel

arbitration (dkt. 23) is granted. The parties are ordered to comply with the procedures set forth

in the dispute resolution agreement contained in the Terms of Use. The case is stayed pending

resolution of the dispute.

Date:  August 19, 2015

_____
U.S. District Judge Joan H. Lefkow

---

[5] Craddock's appeal to public policy is also unavailing. Specifically, she argues that she will not be able to maintain her claim if she is forced to arbitrate it on an individual basis because the expense of obtaining counsel far outweighs the comparatively low potential recovery. That argument is precluded by Supreme Court precedent. *See Am. Express Co.* v. *Italian Colors Rest.*, --- U.S. ---, 133 S. Ct. 2304, 2311, 186 L. Ed. 2d 417 (2013) ("[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." (emphasis in original) (citation omitted)).